## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

★FILED★

------------------------------------------------------------------x

MICHAEL J. WANG, M.D.

2007 OCT 15  PM 2: 26

Plaintiff,

vs.

CLERK
U.S. DISTRICT COURT
E.D.N.Y.

Stony Brook University Hospital ("SUNY")
Peter Glass, as individual & as Chairman of Dept.
Frederick Schiavone, as individual & as Associate Dean
United States Medical License Examination Secretariat
Defendants,

BRIEF FOR
PETITIONER
CV 02-5840(JS)
CV 05-1861(JS)

------------------------------------------------------------------x

## PLAINTIFF MOTION TO REOPEN CASE ON THE GROUND THAT
## DEFENDANT'S ATTORNEY LIED TO COURT ABOUT MATERIAL FACTS
## QUESTIONS PRESENTED FOR REVIEW

Whether the court judgement should be VACATED on the ground that defendant's attorney intentional freud, dishonesty, deceit of making false statements of material facts to the court.

Whether defendants have authority to violate plaintiff's right under 5th and 14th Amendment of the United States Constitution.

Whether defendants have authority to practice racial discrimination and retaliated against plaintiff when he complained about discrimatory treatment.

Whether defendants have authority to practice conspiracy in depriving fundamental civil right that include right to have medical education, and right to seek employment.

## CONSTITUTIONAL AND STATUTORY PROVISIONS INVOLVED

14th Amendment of United States Constitution state Nor shall any state deprive any person of life, liberty, or property without due process of law, Nor deny to any person within its jurisdiction the equal protection of the law.

## PRELIMINARY STATEMENT

This is a case of a group of government agents conspire to deprive fundamental civil right that include, right to have medical education, right to seek employment, defamation of character, and intentional infliction of emotional distress. The level of corruption is wide spread at all level of federal, state, and local government officials.

1

## AFFIDAVIT

Affidavit of Michael J. Wang, M.D. Plaintiff-Appellant appeals  from supreme Court of New York State, County of Suffolk.  Plaintiff being a citizen of the United States, under pains and penalties of perjury to hereby urge this honorable Court to correct error of the lower court's judgment and remand this case for a jury trial on the merits of each of his claims.

Page

## TABLE OF CONTENTS

QUESTIONS PRESENTED FOR REVIEW                              1

CONSTITUTIONAL AND STATUTORY PROVISION INVOLVED            1

PRELIMINARY STATEMENT                                      1

AFFIDAVIT                                                  2

TABLE OF CONTENTS                                          2

TABLE OF AUTHORITIES                                       4

RULES AND STATUES                                          6

TREATISE                                                   7

STATEMENT OF JURISDICTION                                  7

STATEMENT OF ISSUES                                        8

STATEMENT OF THE CASE                                      8

STANDARD OF REVIEW                                         12

ARGUMENT                                                   12

   I.  Defendants are government entities under the Law and Constitution of the United States and its intentional, malicious conduct are not subject immune from law and Constitution of the United States.                              12

   II.  Plaintiff raise a genuine issue of material facts for trial concerning his claims of racial discrimination, and retaliation for complaint about discrimination under the Title VII of the Civil Right Act of 1964 and NYS Executive Law Section 296.

14

2.

A. Plaintiff is qualified resident physician under rule of rule of SUNY     14

B. Defendants' discriminatory denial of credit in residency training was based on race and violates plaintiff's civil right.     15

C. Defendant's discriminatory discharge was retaliation for complaint about discrimination     16

D. Defendant's discriminatory revoke plaintiff's privilege was based on race, and retaliated against plaintiff     17

E. Defendants violates plaintiff's right under the United States Constitution and the New York State Constitution.     18

F. Plaintiff's claims pursue to 42 U.S.C. Section 1981, 42 U.S.C. Section 1983, 42 U.S.C. Section 1985, and 42 U.S.C. Section 1986     19

III. Plaintiff rise genuine issue of material facts for trial concerning his New York State Law Claims     21

A. Defendants breached plaintiff's contract and wrongful discharge     21

B. Defendants further retaliate against plaintiff and interfere with Plaintiff's efforts to secure new employment     22

C. Defendants defame Plaintiff and intentional infliction of emotional distress     23

CONCLUSION     24

FOOTNOTES     24

## TABLE OF AUTHORITIES
### CASES

*Abrams v. Baylor College of Medicine*
805 F. 2d 528 (5th Cir. 1986).

*Anderson v. Liberty Lobby, Inc.,*
447 U.S. 242, 106 Sect. 2505, 91 L. Ed. 2d 202 (1986)

*Banerjee v. Board of Trustees of Smith College,*
648 F. 2d 61 (1st Cir.), *cert. denied,*

*Berry v. Stevinson Chevrolet*
74F. 3d 980, 986 (10th Cir. 1996)

*Bennun v. Rutgers,*
941 F.2d 154 56 F.E.P. Cases 747, (3rd Cir. 1991)

*Berry v. Armstrong Rubber Co.,*
989 F. 2d 822 (5th Cir. 1993), cert., denied, 1144 S.Ct. 1067(1994)

*Bodenheimer v. PPG Industries,Inc,*
5F.3d 955 (5th Cir. 1992)

*Breaux v. Schlumberger Offshore Services,*
817 F. 2d 1226 (5th Cir, 1987)

*Brown v. CSC Logic, Inc.,*
82 F. 3rd 651(5th Cir. 1987)

*Charlton v. Paramut Bd. Of Educ.,*
25F. 3d 194, 198-200 (3rd Cir. 1994), cert. denied,

*Collins v. Baptist Memorial Geriatric Center,*
937 F. 2d 190, 193(5th Cir. 1991)

*E.E.O.C. v. Manville Sales Corp.,*
27 F.2d 1089(5th Cir, 1994),

*Glass v. Petro-tex Chemical Corp.,*
757 F.2d 1554 (5th Cir. 1985)

*Gonzales v. Police Department in San Jose,*
901 F.2d 13 (7th Cir, 1987)

*Graefebhain v. Pabst Brewing Co.*
827  F.2d 13 (7th Cir. 19)

*Grizzle v. Travelers Health Network, Inc.,*
14 F. 3d 261, 267 (5th Cir. 1994)

*Gutzwiller v. Fenik*
860 F. 2d 1317 (6th Cir. 1988)

*Jones v. Flagship International*
793 F. 2d 714, 727-28 (5th Cir. 1987)

*Kunda v. Muhlenberg*
621 F.2d 532(3rd Cir. 1980)

4

*Lam v. University of Hawaii,*
40 F.3d 1551, 66 F.E.P. Cases 75 (9th Cir, 1994)

*McDonald Douglas Corp v. Green,*
411 U.S. 792, 93 S. Ct, 1817, 36L.Ed. (2nd 668 1973)

*Normandy v. Research Institute of America*
927 F. 2d 857 (5th Cir. 1991)

*Pantchenko v. C.B.Dolge Company, Inc.,*
581 F .2d 1052 (2nd Cir, 1978)

*Portis v. First National Bank of New Albany MS,*
34 F.3d 325(5th Cir. 1994)

*Robinson v. City of Pittsburgh*
120 F.3d 1286, 1300 (3rd Cir. 1997)

*Roebuck v. Drexel University*
825 D 2d 715 (3rd Cir. 1988)

*Sinai v. New England Telephone,*
3 F.3d 471, 62 F.E.P. Cases 1202 (1st Cir, 1993)

*Smith v. St. Louis University,*
109 F. 3d 1261, at 1266 (8th Cir. 1997)

*Torres v. Pisano*
116 F.3d 625, 640 (2ND Cir, 1997)

*Zahorik v. Cornell University,*
729 F.2d 85 (2nd Cir. 1984)

## RULES AND STATUES

The Fifth, and Fourteenth Amendment of the United States Constitution

18 U.S.C. Section 241

18 U.S.C. Section 242

18 U.S.C. Section 245

28 U.S.C. Section 1331

28 U.S.C.  Section 1337

28 U.S.C.  Section 1291

28 U.S.C. Section 1232

28 U.S.C. Section 1343

28 U.S.C. Section 1367

42 U.S.C. Section 1981

42 U.S.C. Section 1983

42 U.S.C. Section 1985

42 U.S.C. Section 1986

42 U.S.C. Section 1988

42 U.S.C. Section 2000 (e)

The Civil Right Act of 1991

New York State Constitution

New York State Executive Law (New York State Human Right Law) Section 296

Retaliation for complain about discrimination

Breach of Contract

Intentionally interfere with plaintiff efforts for new employment

Defamation, malice, and reckless.

Intentional infliction of emotional distress

### TREATISE

EEOC Compliance Manual, Section 8,  retaliation, Para. 8-II(D3) (1988)

Unlawful employment practice for an employer to discriminate against any of his employees  because his race, national origin, and he has opposed any practice made an unlawful employment practice or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the Title VII of the Civil Right Act of 1964.  The EEOC has interpreted  diverse employment actions to mean  any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity

    1.  Make threat, will file case to Court or other agents.

6

2. Refusing to obey an order because of a reasonable belief that it is discriminatory.

3. Retaliation for complain about discrimination.

4. Probation, Denial of credit, suspension, and termination.

5. Give negative job reference.

6. Refuse to provide a job reference.

7. Inform an individual prospective employer about individual protected activity.

## STATEMENT OF JURISDICTION

Original jurisdiction of this Court founded upon 28 U.S.C. Section 1331, *et seg*. In that this is a civil action wherein the matters in controversy arise the laws of the United States, including 42 U.S.C. Section 2000(e), as amended, including but not limited to, the Civil Right Act of 1991, NYS Executive Law Section 296, and 42 U.S.C. Section 1981, 1983, 1985, 1986 The Jurisdiction of this court is also founded upon the legal principals of pendant jurisdiction.

During the tenure of Dr. Wang employment, defendants discriminated against him because of his race and further retaliated against him when he complained about discriminatory treatment. This action seeks compensatory and punitive damages for defendant violations of the United States Constitution, The New York State Constitution, Federal and New York State anti-discrimination statutes as well as claims arising under New York common law.

## STATEMENT OF ISSUES

Genuine issues of material facts with respect to each of Dr. Wang claims of discrimination: 1) denial of credit, 2) harassment, interference during employment, and retaliation 3) discharge brought under 42 U.S.C. Section 1981; 4) retaliatory discharge and discriminatory discharge brought under 42 U.S.C. Section 2000(e) *et seq*. 5) Defendants intentionally inflict injury plaintiff and deprived plaintiff equal privilege, equal protection right, and conspiracy pursue to 42 U.S.C. Section 1981, 42 U.S.C. Section 1983, 42 U.S.C. Section 1985, and 42 U.S.C. Section 1986. 6) Defendants violate plaintiff right under the 5th and 14th Amendment of the United States Constitution.

7

Genuine issue of material fact respect to Plaintiff New York State Law claim alleging 1) breach of contract, 2) defamation, malice, and reckless 3)New York State Human Right Law Section 296. 4) Intentional interference with his prospective economic advantage by interfering with plaintiff efforts for new employment. 5) Intentional infliction of emotional distress. 6) New York State Constitution

## STATEMENT OF THE CASE

**Statement of facts**

*Background*

Dr. Wang is a physician of Asian descent, born in the People Republic of China. In 1982, Dr. Wang graduated from Zhangjiakou Medical College, in Hebei, People Republic of China. (see exhibit 1, and trial witnesses testify)

As of June 8, 1998, Dr. Wang received a current valid certificate (number 0-526-755-4) from the Education Commission for Foreign Medical Graduates( CFMG , having received a satisfactory score on the ECFMG examinations in basic and clinical sciences and English.(see exhibit 2)

Between July 1, and June 30, 2000, Dr. Wang successfully completed his first year of post-graduate training in general surgery (PGY-1) at St. Vincent Hospital and Medical Center in New York City.(see exhibit 3, 3.1, 3.2, 3.3, 3.4)

By letter dated June 14, 2000, SUNY agreed to employ Dr. Wang as a second year resident physician (PGY-2) in its anesthesiology residency training program (the UNY training program . At a salary of $43,672, which position he assumed as of July 1, 2000. (see exhibit 4, and trial witnesses testify)

As a condition of accepting Dr. Wang into the SUNY training program, SUNY required that as a graduate of foreign medical school, Dr. Wang hold a current valid ECFMG certificate, which to be verified by the SUNY program director Ellen S. Steinberg, M.D. (see exhibit 5) Dr. Wang provided the required documentation, and upon information, prior to accepting Dr. Wang into the program on July 1, 2000, SUNY verified Dr. Wang credentials. (see exhibit 6, 127)

Beginning in December 2000. Dr. Wang and two other physicians of Chinese descent in the SUNY training program were treated in a hostile and discriminatory fashion based on their race, including placing them on a probationary status for reason that were not accurate and refused to provide them to access to the information which allegedly support that action. (see exhibit 7-100, 108, and trial witnesses testify)

Between January and June 2001, Dr. Wang requested from each of the attending physician in the SUNY training program with whom he worked a performance evaluation each of these were at least satisfactory.(see exhibit 7-100, 107, and trial witnesses testify)

By letter dated April 20, 2001, SUNY reappointed Dr. Wang as third-year resident and Clinical Assistant Instructor (PGY-3) at a salary of $49,064, which position he assumed as of July 1, 2001.(see exhibit 101)

In June 2001, Dr. Wang received an award for his medical knowledge; he was the only resident physician in his class to receive this award. (see exhibit 109).
By letter dated September 17, 2001, The American Board of Anesthesiology ( BA  notified Dr. Wang the SUNY Clinical Competency Committee had reported his grade for clinical competence as being unsatisfactory for the 6-month period January 1 to June 30, 2001. (see exhibit 102, and trial witnesses testify) The information SUNY conveyed to the ABA was false. Upon information, SUNY communicated false information to the ABA based on discriminatory intent. (see exhibit 7-100, 118, and trial witnesses testify)

*Plaintiff complaint about discrimination.*

On October 6, 2001, Dr. Wang wrote to the ABA, Complaining that he was a victim of discrimination, that his civil right had been violated, and that his file had been tampered with such that the report given by SUNY to the ABA was false and fraudulent. Dr. Wang sent a copy of his letter to the ABA to Drs. Glass and Steinberg which they received. (see exhibit 103, and trail witnesses testify)

*Defendants retaliated against plaintiff.*

Dr. Wang was on vacation between October 15 and November 18, 2001.Upon his return to work on November 19, 2001, Dr. Wang was summoned to a meeting by defendant Glass,

at which time Glass told Dr. Wang that the medical credential investigation [by SUNY] was prompted by [his] letter to the ABA and threatened him that  you [Dr. Wang] will never practice medicine in this country. (see exhibit 108)

Later that morning, Dr. Wang met with defendant Schiavone, who questioned his about his medical credentials and then suspended his from all duties without pay until such time as [his] credential was verified. (see exhibit 104, and trail witnesses testify) Notwithstanding Dr. Wang had previously submitted documentation verifying his credentials, the next day, November 20, 2001, Dr. Wang again presented SUNY with originals of the requested documentation, and arrange for such further documentation from prior employers to be sent directly to SUNY. (see exhibit 1,2,3, and trial witnesses testify)

Nevertheless. On December 4, 2001, SUNY dismissed Dr. Wang from the SUNY training program claiming that it had not received verification of his credentials. (see exhibit 105, 125 and trail witnesses testify) Subsequently, SUNY refused Dr. Wang  efforts to seek reinstatement even though by January 2002, SUNY had received verification of Dr. Wang credentials and further defendants denied grieve procedure that include hearing and due process.(see exhibit 116, 120, 126 and trial witnesses testify)

Defendants made false statement about Dr. Wang lack of credentials and subjected his to intentionally discriminatory treatment, motivated at least in part by a desire to punish Dr. Wang for having complained about discriminatory treatment in disregard of his civil right. (see exhibit 117, and trial witnesses testify)

*Defendants further retaliate and interfere with*
*Plaintiff efforts to secure new employment.*

Following his unlawful termination from SUNY, Dr. Wang attempts to secure a position in other residency training programs. Defendant Glass acted at his direction  of SUNY supervisory conveyed false information about Dr. Wang  credentials and fitness for such position which resulted in his being denied these positions.(see exhibit 111, 112, 119, 121 and trial witnesses testify)

In addition, defendant Glass acted at his direction of SUNY supervisory personnel defamed Dr. Wang by reporting falsely to the New York State Department of Health, Office of

Professional Medical Conduct, that he had practice medicine fraud and suffered from a substance abuse problem. In supplying this false information, defendants were motivated by malice and with a purpose to inflict injury upon Dr. Wang (see exhibit 106, 113, and trial witnesses testify)

*Co-conspirator retaliated against and defame plaintiff*

On September 24, 2004 co-conspirator USMLE illegally revoked Dr. Wang privilege to take Medical License Examination, prohibit Dr. Wang to seek employment in health care field on basis of SUNY false allegation and defame Dr. Wang "inflation of test score" (see exhibit 135) .

USMLE made false allegation regarding USMLE score is fabricated and defamatory (see exhibit 132, 133) defendant action never had any hearing and due process that violate the rules set by defendant its self (see exhibit 131)

## STANDARD OF REVIEW

In reviewing summary judgment. The Court must view the evidence presented in light most favorable to the party opposing the motion. *Rhodes v. Guiberson Oil Tools,* 75 F .3d 950 (5th Cir. 1996). In the case of *Reeves v. Sanderson Plumbing Products, Inc.,* The unanimous U.S. Supreme Court reaffirmed that he standard for granting summary judgment mirrors the standard for judgment as a matter of law, such that the inquiry under each is the same *Reeves*, at 2110. Any doubts about the propriety of granting the motion must be resolved against moving party. *Stationaer Corp. v. Dan & Bradstreet, Inc.* 62 Cal, 2d 412, 417 (1965) *Violette v. Soup* 16 Cal. app. (4th Cir 611 1993).

*Berry v. Armstrong Rubber Co.,* 989 F.2d 822 (5th Cir. 1993), *cert denied,* 114 S.Ct. 1067(1994). *Bodenheimer v. PPG Industries, Inc.,* 5 F3d 955(5th Cir. 1992). The party seeking summary judgment must demonstrate its entitlement to judgment as a matter of law and that no genuine issue of material fact exists by showing that there is an absence of evidence to support the non-moving party case. *Celotes Corp. v. Catlett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553 (1986). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party.

11

*Anderson v. Liberty Lobby, Inc*, 447 U.S. 242, 248, 106 S.Ct. 2505 2510, 91 L. Ed. 2d 202 (1986). The Court must draw all justifiable inferences in favor of the non-moving party. *Id.* at 255, S.Ct. 2513.

## ARGUMENT

**I. Defendants are government entities under law and Constitution of United States and its intentional, malicious conducts are not subject immune from law of U.S.**
Defendants, co-conspirators are government entities report result of test to authorities and conduct post-graduate medical education for use in granting initial license to practice medicine.  Respondents provide them with a common evaluation for applicants for initial medical license (see exhibit 141,150).

License to practice medicine is property right of which the physician may not be deprived without due process of law see *Lowe v. Scott* 959 F 2d 323, 334 (1st Cir 1992) A physician is entitled to notice and a hearing as well as the opportunity to examine the evidence and cross-examine witnesses before his privilege may be suspended or revoked by the state. *Martin v. Unified School District No.*  434, 728 F. 2D 453 (10th Cir. 1984).

42 U.S.C. Section 1983 provide a cause of action for deprivation of any right under the Constitution or other law by governmental entity.  Privileges to seek employment are property right and  liberty interest that can not be terminating without due process. Respondents are  states actors they are governmental or quasi governmental entities *Aluko v. Charlotte-Kleinberg Hospital Authority* 959F Supp 729 (W.D.N.C. 1997) citing that Supreme Courts decision in *Board of Regents of State College v. Roth* 408 U.S. 564, 569 (1972) the *Aluko* court noted that  here a person  good name, reputation, honor, or integrity is at stake because of what the government is doing to him notice and opportunity to be heard are essential 959 F. Supp. At 735 defendant  action damage plaintiff  reputation, and also permanently damage his earning capacity see *Memillan v. Auchorage Community Hospital*  646 p. 2d 857 (Alaska 1982).

We hold there truths to be self-evident that all men are created equal. That they are endowed by their creator with certain unalienable right. That among there life, liberty, and

12

the pursuit of happiness. *The declaration of independence of the United State of America in General Congress* July 4, 1776

Defendant, USMLE admitted that they are federal test agency(see respondents brief page 3) There are many test agents in U.S. for example, American Bar administer exam for lawyer who pursuit to licenses attorney, SAT administer test for high school graduates who pursuit to college education, GRE for graduate students who pursuit to higher level of education etc. If these test agents have authority and illegal reject applicants who pursuit to better education and better life to take test that may destroy many hard working American people and American dream they are pursuit to.

Discrimination is a plague that hamstrings corporate productivity and steal the dignity of all mankind. It is the definition of non-American the law does not grant immunity to defendants that acted with intentional, malicious intent that they knew it to be false or reckless or they knew there was a probability it was false. Because of threat of retaliation can nullify all other right known to our citizen. It is discrimination at its most pernicious.

**II.  Plaintiff rise a genuine issue of material fact for trial concerning his claims of race and national origin discrimination and retaliation for complaint about discrimination under the Title VII of the Civil Right Act of 1964.  NYS Executive law Section 296**
Under Title VII, It is unlawful for an employer to discriminate and to discharge any individual, or otherwise to discriminate to against any individual with respect to his compensation, term, conditions, or privilege of employment, because of such individual race, national origin, and complaint about discrimination.  42 U.S.C. Section 2000 (e). To prove discrimination, Plaintiff has presented direct evidence of discrimination, and retaliation from SUNY. *Lim v. Trustee of Indiana University* 297 F. 3d 575, 580(7th Cir 2002), *McDonnell Douglas Corp. v. Green* 411 U.S. 792 (1973)

**A. Plaintiff is qualified resident physician under Rule of SUNY**
According to rule of SUNY, the ECFMG certificate is the only required documentation for residency training program (see exhibit 4).

Dr. Wang grows up in a medical family. His father was Dean of Medical School, mother was a physician of internal medicine, and his brother is a cardiologist (see trial witnesses testify).

Dr. Wang graduated from Zhangjiakou Medical College, Hebei, People Republic of China. As of June 8, 1998, Dr. Wang received a current valid certificate (number 0-526-755-4) from the Educational Commission for Foreign Medical Graduates ( CFMG , having received a satisfactory score on the ECFMG examinations in basic and clinical sciences and English (see exhibit 1, 2, and trial witnesses testify).

Between July 1, 1999 and June 30, 2000, Dr. Wang successfully completed his first year of post-graduate training in general surgery (PGY-1) at St. Vincent Hospital and Medical Center in New York City (see exhibit 3, 3.1, 3.2, 3.3, 3.4).

As a condition of accepting Dr. Wang into the SUNY training program, SUNY required that, as a graduate of foreign medical school, Dr. Wang hold a current valid ECFMG certificate, which was to be verified by the SUNY program director Ellen S. Steinberg, M.D. (see exhibit 6, 127)Dr. Wang provided the required documentation, and upon information, prior accepting Dr. Wang into the program on July 1, 2000, SUNY verified Dr. Wang credentials (see exhibit 1, 2, 3, 6).

Dr. Wang was excellent resident physician at SUNY Anesthesiology residency program. *Under Zahoarik*, Dr.Wang may employ referent or other scholars in the particular field to assist in making *a prima facie case* (see exhibit 3, 3.1, 3.2, 3.3, 3.4, 7-100, and trial witnesses testify).

**B. Defendant discriminatory denial of credit in residency training was based on Race and violated plaintiff civil right.**

In order to establish a prima facie case of discrimination for denial of credit, the plaintiff has show 1) that he is a member of a protected class; 2) that he sought and was qualified for an available employment position; 3) that His job performance is up to the employer legitimate expectation for that position. 4) He suffered an adverse employment action, and that the employer treated similarly situated employees outside than protected class more favorably. *Mateu-Anderegg v. School Dist. of Whitefish Bay* 304 F. 3d 618 625(7th Cir 2002). (See exhibit 7-100, and trial witnesses testify)

14

Dr. Wang was excellent resident physician in both clinical performance and medical knowledge during his training both at St Vincent Hospital and SUNY at Stony Brook University Hospital. He received excellent and good evaluations from faculty and attending physicians (see exhibit 3, 3.1, 3.2, 3.3, 3.4, 7-100). Dr. Wang received an award for his medical knowledge at June 2001 he is the only resident received this reward in his class (see exhibit 7-100, 109, and trial witnesses testify).

Despite defendant knowledge of this fact. Defendants deliberate denied Dr. Wang credits which he deserves. Defendant denial of credit to Dr. Wang and its subsequent harassment and retaliation culminating in discharge forma continuing violation (see exhibit 118, and trial witnesses testify) under both 42 U.S.C. Section 1981 and the 42 U.S.C. Section 2000 (e*). *Glass v. Petro-Tex Chemical Corp.*, 757F.2d 1554(5th Cir. 1985): *Abrams v. Baylor College of Medicine*, 805 F .2d 528(5th Cir. 1986).

## C. Defendant discriminatory discharge was retaliation for complaint about discrimination

In this facie claim for retaliation, the plaintiff has established: 1) the plaintiff engaged in protected activity under the Title VII, 2) an adverse employment action occurred; and 3) there was a causal connection between the participation in the protected activity and the adverse employment action. *Holt v. JTM Industies, Inc.* 89 F. 3d 1224 (5th Cir. 1996). An employee as engaged in protected activity if he has either 1) opposed any practice made an unlawful employment practice or 2) made a charge , testified, assisted or participated in any manner in an investigation, proceeding or hearing under the statue. Grimes, suora; *Long v. Eastfield College,* 88 F. 3d 300 (5th Cir. 1996). The plaintiff has shown that he has at least a reasonable belief that the opposed practices were unlawful. Long supra Holt; *Barrow v. New Orlean S.S. Assn.,* 10 F .3d 292 (5th Cir. 1994).

## The time frame of adverse employment action states facts and truth

September 17, 2001, the American Board of Anesthesiology ( BA notified Dr. Wang that the SUNY Clinical Competency Committee had reported his grade for clinical competence as being unsatisfactory for the 6-month period January 1 to June 30, 2001. The information SUNY conveyed to the ABA was false upon information SUNY communicated false

15

information to the ABA based on discriminatory intent (see exhibit 7-100, 102, 118, and trial witnesses testify).

October 6, 2001 Dr. Wang wrote to the ABA, complaining that he was a victim of discrimination, that his civil rights had been violated, and that his file had been tampered with such that the report given by SUNY to the ABA was false and fraudulent Dr. Wang sent a copy of his letter to the ABA to Drs. Glass and Steinberg which they received (see exhibit 103, and trial witnesses testify).

Dr. Wang was on vacation between October 15, 2001 and November 18, 2001 Defendant retaliates against plaintiff, upon return to work on November 19, 2001. Dr. Wang was summoned to a meeting by defendant Glass, at which time Glass told Dr. Wang that the edical credential investigation [by SUNY] was prompted by [his] letter to the BA and threatened his that you [Dr. Wang] will never practice medicine in this country. (See exhibit 108).

Later that morning, Dr. Wang met with defendant Schiavone, who questioned his about his medical credential and then suspended his all duties without pay until such time as [his] credentials were verified (see exhibit 104, and trial witnesses testify) Notwithstanding that Dr. had previously submitted documentation verifying his credentials, the next day, November 20, 2001, Dr.Wang again presented SUNY with originals of the requested documentation, and arranged for such further documentation from prior employers to be sent directly to SUNY (see exhibit 1,2,3).

Nevertheless, on December 4, 2001, SUNY dismissed Dr. Wang from the SUNY training program claiming that it had not received verification of his credential (see exhibit 105, 125, and trial witnesses testify). Subsequently, Defendant refused Dr. Wang efforts to seek reinstatement even though by January 2002, Defendant had received verification of Dr. Wang credentials. And defendants further denied grieve procedures that include hearing and due process that is clearly indicated in Hospital Staff Handbook 1999 (see exhibit 120).

Defendants made false statement about Dr. Wang lack of credentials and subjected his to intentionally discriminatory treatment, motivated at least in part by a desire to punish Dr.

16

Wang for having complained about discriminatory treatment in disregard of his civil right.(see exhibits 117, and trial witnessed testify).

The plaintiff establish *prima facie* case of discrimatory discharge show that 1) he was discharges 2) he was qualified for that position 3) he was within the protected class at the time of employment action. 4) There was a causal connection between participation in the protected activity and adverse employment action. *Rhodes, supra.*

## D. defendants discrimatory revoked plaintiff  privilege was based on race and retaliated against plaintiff

42 U.S.C. Section 2000(e)-2 prohibitions against discriminatory use of test scores. To limit segregate or classify his employee or applications for employment in any way which would deprive or tend to deprive any individual or employment opportunities or otherwise adversely affect his status as an employee, because of such individual  race, color, or national origin.

Dr. Wang was excellent resident physician in both clinical performance and medical knowledge during his residency despite respondents knowledge of this fact. Respondent deliberate revoke Dr. Wang  privilege prohibit him to seek employment and survive in this country. Subsequently defame him in forma constitute violation under both 42 U.S.C. Section 1981 and 42 U.S.C. 2000(e).

## E. Defendants violated plaintiff right under the United States Constitution, and the New York State Constitution

The Fourteenth Amendment of United States Constitution gives the due process and equal protection right.  New York Constitution gives same right as United States Constitution. Defendants intentionally denied plaintiff  due process and equal protection right which are guaranteed to him by United States Constitution and New York State Constitution after unlawful termination.

Plaintiff is entitled to the equal protection of the law under the Fourteenth Amendment of United States Constitution and due process of law under the Fifth and Fourteenth Amendment of United States Constitution.  Defendants were willful and were intended to cause injury to plaintiff in violation of his legal right.  Plaintiff suffer harm and other

17

physical injury because respondent  failure to use due care (see exhibit 113, 126, and trial witnesses testify).

Defendants' failed to take all reasonable steps necessary to prevent discrimination and retaliation against plaintiff from occurring and to take all reasonable steps necessary to remedy discrimination and retaliation that had occurs against him at SUNY training program (see exhibit 115, 116, 120, 126, and trial witnesses testify).

**F. Plaintiff  claims pursue to 42 U.S.C. Section 1981, 42 U.S.C Section 1983, 42 U.S.C. Section 1985, 42 U.S.C. Section 1986**

42 U.S.C. Section 1981 Equal rights under the law --- All people within the jurisdiction of the United States shall have the same right in every state... to the full and equal benefit of all laws and proceeding for the security of person and property as is enjoyed by white citizens.

*Johnson v. Railway Express Agent, Inc.*  4521 U.S. 454 459-60 10F E.O. Case 817. 819(1975) hold that  2 U.S.C. Section 1981 affords federal remedy against discrimination in employment on the basis of race  The Court  holding makes clear that Section 1981 was intended to  prohibit discrimination in the making or enforcement of contract against or in favor of any race  *McDonald v. Sabta Fe Trial Transportation Co.*  427 U.S. 273 96S Ct 2574, 12 F.E.P. cases 1585)1976) Private individuals and organizations can be sued under Section 1981 prohibits discrimination based on ancestry or ethnicity.  *St. Frances College v. Al-Karajan* 481 U.S. 604 (1981) Moreover Section 101 of Civil Right Act 1991 prohibits intentional discrimination in employment practice.  Defendant  actions deprive plaintiff civil right under Section 1981.

42 U.S.C. Section 1983 Civil right action for deprivation of right any citizen of the United States or other person within the jurisdiction there of to the deprivation of any right privilege, or immunities secured by the constitution and laws, shall be liable to the party injures in an action at law, suit in equity, or other proper proceeding for redress, for the purpose of this section. In order to state a claim under 42 U.S.C. Section 1983 plaintiff demonstrate defendant act under color of state law, deprived plaintiff of federal statutory

18

and/or constitutional right *Gonzaga University v. Doe* 536 U.S. slip. Op. at 8, case #01-678(U.S. June 20, 2002); *Eagleston v. Guido,* 41 F. 3d 865 (2nd Cir. 1994).

42 U.S.C. Section 1985 Conspiracy interfere with civil right if two or more persons conspire for the purpose of impending, hindering, obstructing, or defeating, in any manner, the due course of justice in any state or territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce the right of any person or class of person to the equal protection of the laws. To prove the existence of a civil right conspiracy. A plaintiff need only show that the defendants had meeting of the minds or mutual understanding *Mershon v. Beasley* 994 F 2d 449 451 (8th Cir 1993) Moreover, a plaintiff need not prove that every conspirator knew the exact details of the plan, and the question of whether a conspiracy existed should not be taken from jury where the jury can infer from the circumstances that the defendants had a meeting of the minds or reached an understanding. *Hampton v. Hanraham* 600 F 2d 600, 620-23 (7th Cir 1979) *cer denied* 446 U.S. 754 (1980) conspirators rarely formulate their plans in ways susceptible of proof by direct evidence thus conspiracies must often be proven by circumstantial evidence only *Crow v. Incas* 595 F 2d 985 (5th Cir, 1979)

There is evidence of conspiracy the record before the Court establishes the following evidence of a conspiracy between Glass and Schiavone. At November 19, 2001 Glass threaten Dr. Wang that you [Dr. Wang] will never practice medicine in this country then Glass directed Dr. Wang to meet with Schiavone then Schiavone suspended Dr. Wang all clinical duty without pay (see exhibit 104) at November 30, 2001 Glass issued letter of termination first (see exhibit 125) then Schiavone issued termination letter at December 4, 2001 (see exhibit 105) There is evidence of unlawful intent. Glass final efforts at avoiding responsibility under Section 1985 for his shameful conduct is to argue that the intent of his conspiracy has nothing to do with himself and sole determined by Schiavone. Since the facts create the inference of a conspiracy the question become What was its purpose? A purpose to deprive plaintiff of his equal protection right is established by inferences that may fairly be drawn from the behavior of the conspirators *Delon* 887 F 2d at 1515 The purpose to deprive other of protected right does not need to be conspiracy only in order to be actionable under Section 1985 *Bray,* 506 U.S. at 276 (a conspirator must ct at least in part for the purpose of producing a deprivation of a right)

19

Pursuant to Section 1985 and 1986, plaintiff has established 1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the law, or of privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injure in his person or property or depriving of any right or privilege of a citizen of the United States. *United Brother Hood of Carpenter and Joiners, Local 610 v. Scott,* 463 U.S. 825, 8828-29 (1983) To prove a conspiracy in violation of 42 U.S.C. Section 1985. Plaintiff has shown that some racial, or perhaps otherwise class-based, individually discriminatory animus behind the conspirators defendants Glass, Schiavone. And other respondents *Griffin v. Breckenridge,* 403 U.S. 88, 102(1971).

The same issue was brought up by USMLE, against plaintiff are pending a jury trial at federal court. It is violated rules set by respondents that interfere with same issues that are pending a trial at court. Defendant act in furtherance of conspiracy with SUNY and SUNY presented defendant action to federal court and trying to use defendant papers to contaminate federal court this is *a prima fancies case* of conspiracy on part of USMLE and on part of SUNY. Despite defendant knowledge of this illegal nature of conduct. Defendants intentionally, malicious inflict injury upon Dr. Wang. Defendants knew or had reason to know about a conspiracy to injure plaintiff and fail to prevent conspiracy. 42 U.S.C. Section 1986 action for neglect prevent.

### III. Plaintiff rise genuine issue of material fact for trial concerning his New York State Law Claims.

#### A. Defendants Breached Plaintiff Contract and Wrongful Discharge.
*In Brianna v. Whyeth Laboratories, Inc.* 526 So. 2d 1001 (1988), the Court sat that the promise of employment for other than a defined term might be allowable where the employee offered something belong the performance of his job.

Defendants violated Plaintiff appointment for the 2001 2002 academic years. Despite the fact Glass letter of termination at November 30, 2001 violates controlling provisions of Wang contract with SUNY as set forth in the 1999 Stony Brook Hospital Staff Handbook (see exhibit 101, 105, 114, 125). It should be noted that with respect to the denial of access

to grievance procedure that is additional evidence of retaliation from defendants (see exhibit 120)

Plaintiff has performed all conditions, and promises required of his to be performed in according with the terms and condition of the written contract. Defendants breached the contract by failing to perform its obligations under contract. Dr. Wang suffers harm and other physical injury (see exhibit 101, 105, and trial witnesses testify).

**B.   Defendants further retaliate against plaintiff and interfere with plaintiff efforts to secure new employment**

The need for protection against retaliation does not disappear when the employment relationship ends, indeed, post-employment blacklisting is sometimes more damaging than on-the-job discrimination because an employee subject to discrimination on the job will often continue receive a paycheck while a former employee subject to retaliation must be prevented from obtaining any work in the trade or occupation previously pursued. *Charlton v. Paramus Bd. of Educ.*, 25F. 3d 194, 198-200(3rd Cir. 1994). Cer denied, 513 U.S. 1022, 115 S.Ct. 590, 130L.Ed.2d 503 (1994)

Following his unlawful termination from SUNY, Dr. Wang attempt to secure a position in other residency training programs. defendant Glass acted at his direction of SUNY supervisory personnel conveyed false information about Dr. Wang credential and fitness for such position which resulted in his being denied these positions. Defendant action deprive plaintiff civil right, liberty, and property of interest guaranteed to him by Constitution of the United States (see exhibit 110, 111, 112, and trial witnesses testify).

In addition, defendant Glass acted at his direction of SUNY supervisory personnel defamed Dr. Wang by reporting falsely to the New York State Department of Health, Office of Professional Medical Conduct that he practice medicine fraud and suffered from a substance abuse problem. In supplying this false information, defendants were motivated by malice and with a purpose to inflict injury upon Dr. Wang. Defendants fully defamed plaintiff and damaged his good name, characters, and reputation (see exhibit 106, and trial witnesses testify).

21

As a result of the intentional, malicious, reckless, and willful act of retaliation. Plaintiff has suffered damage his good name, character, reputation, loss of income, emotional distress, mental anguish, humiliation, pain, and suffering (see exhibit 113, and trial witnesses testify).

**C. Defendants defamed plaintiff and intentional infliction of emotional distress.**
Under the New York State Law,  intentional infliction of emotional distress is described as follows One who by extreme and outrageous conduct intentionally or recklessly cause severe emotional distress to another is subject to liability for such emotional distress *Cullison v. Malley* 570 NE. 2d 27. 31 (1991)

Plaintiff starts an extensive job search and sends hundreds of job applications to whole country following unlawfully termination and continue job search every year. Defendants intentionally interfered with Dr. Wang  prospective economic advantage by interfering with his efforts to secure new employment after leaving the SUNY, and did so in a manner intended to and which did in fact humiliate and embarrass him and injured his reputation and character (see exhibit 110, 111, 112, and trial witnesses testify).
Defendant  actions, despite their knowledge and awareness of the illegal nature of that conduct, were willful, outrageous, beyond the bounds of civilized conduct, and undertaken with the intention to inflict and did inflict emotional distress.
The defendant slandered and libeled Dr. Wang.  Defendants interfere with plaintiff  efforts for new employment by both refusing give job reference to Dr. Wang who has requested and gave negative reference to prospective employers who requested.  In addition defendant reporting falsefully to New York State Department of Health, Office of Professional Medical Conduct, and That Dr. Wang practice medicine fraud and drug abuse spreads this false information to SUNY (see exhibit 106, and trial witnesses testify).

Emotional trauma and mental anguish endured by plaintiff and which continue to be endured are of the type and are so severe that no reasonable person could be expected to endure them at the very least, a reasonable jury could so find, and a material fact issue has been raised.

Defendant actions are so outrageous in character, and extreme in degree, as to go beyond all possible bound civilized and to be regard as atrocious and utterly intolerable in a civilized society (see exhibit 117, and trial witnesses testify).

As a direct and proximate result of the wrongful conduct of defendants and each of them plaintiff is hurt, injure in his health, strength, activity, sustaining injury to his nervous system, and person. All of which injures have caused, and continue to cause plaintiff great mental, physical, emotional, nervous pain, and suffering (see exhibit 113, and trial witnesses testify).

## CONCLUSION

Petitioner urges this Honorable Court to reopen this case. Genius issue of material facts exist with respect to each of petitioner claims and forward this case for a jury trial on the merits of each of his claims.

## FOOTNOTES

A party opposition to or complaints concerning perceived harassment or discrimination is considered protected activity See *Collins v. Baptist Memorial Geriatric Center*, 937 F.2d 190, 193 (5th Cir, 1991), cer. Denied, 502 U.S. 1072, 112 S.Ct.968, 117 L.Ed.2d 133(1992) citing *Jones v. Flagship International*, 793 F.2d 714, 727-28 (5th Cir. 1987)); See also *Grizzle v. Travelers Health Network Inc.*, 14F.3d 261, 267 (5th Cir. 1994).

42 U.S.C. Section 2000(e) -3(a) Civil Right Act of 1964, Title VII Section 704(a). There are two distinct clause in Section 704(a): the apposition clause and the anticipation clause *Robinson v. Southeastern Pa. Trans Auth.* 983 F. 2d 892. 896 n. (3rd Cir 1993) T)he opposition and participation clause are drafted in the disjunctive, indicating there is a distinctive to be made in the actions protected by each clause differs *Morris v. Boston Edison Co.* 942 F. Supp. 65, 70 (D. Mass, 1996). The apposition clause prohibits retaliation because the employee opposed any practice mean unlawful by Title VII, Robinson 982 F. 2d. 896 n4. The Participation clause prohibits retaliation because the employee charges, testified, assisted, or participated in an investigation, proceeding, or hearing under Title VII Id .

23

*Kachmar v. SunGard Data Sys., Inc.,* 109 F3d 173 (3rh Cir. 1997). An employer who retaliates can not escape liability merely because the retaliation falls short of its intended result. All that is required to establish a prima facie case of retaliatory discrimination is proof 1) that the plaintiff engaged in protected activity, 2) that the employer took an adverse action against him and 3) that causal link exists between the protected activity and the employer adverse action.

Dated:   October.14, 2007

cc. Barbara Underwood
   A.G. Office
   120 Broadway
   New York, NY 10271
   (212)426-8096

Silvia LeBlanc
Morgan Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103
(215) 963-5000

Respectfully Submitted

Michael Wang

Michael Wang M.D.*pro se*

24